UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

Jul 12   7 43 AM '04

ZAKS, et al.                    :

v.                              :        No. 3:01cv2266 (JBA)

TES FRANCHISING ET AL.          :

## Ruling on Defendants' Motion to Stay Litigation and Compel Arbitration [Doc. # 58]

I.  **Background**

Plaintiffs Steven Zaks ("Zaks") and T. Barry Stephens ("Stephens"), franchisees of defendant TES Franchising, LLC ("TES"), each filed suit against defendant TES, The Entrepeneur's Source, Inc. and Terry Powell (collectively, the "Defendants"), alleging fraud and fraudulent misrepresentation, negligent misrepresentation, and violations of the Connecticut Unfair Trade Practices Act and Maryland Franchise Registration and Disclosure Law.  The franchise agreements that both Zaks and Stephens signed included arbitration clauses, and pursuant to these agreements, the defendants moved to stay the cases and compel arbitration. In rulings issued on July 10 and August 22, 2002, this Court denied defendants' motions, and on October 3, 2002, the Court consolidated the two cases.

Defendants subsequently appealed this Court's rulings to the Second Circuit, where the cases were consolidated for hearing on November 12, 2002.  During the appeal, issues arose as to what

1

documents were properly included in the record.  In particular,
the Court of Appeals record included an addendum to Zaks'
Franchise Agreement and Uniform Franchise Offering Circulars
signed by both plaintiffs, which was missing from the record
before this Court.  At a pre-trial conference with this Court on
April 8, 2003, the parties agreed to withdraw the appeals pending
before the Second Circuit so that this Court could decide the
arbitration issue with all contested documents in the record.
The parties filed a stipulation of dismissal on July 21, 2003,
and on August 5, 2003, the Second Circuit dismissed the appeals
and remanded the actions to this Court.  This Court vacated its
earlier rulings on defendants' motions to compel arbitration and
stay litigation, and set a new schedule for the filing of new
motions to compel arbitration.

    The franchise agreements that both Zaks and Stephens signed
are identical in the following respects.  Section XX, entitled
"Arbitration," provides that:

> All disputes and claims relating to this Agreement, the
> rights and obligations of the parties hereto, or any
> claims or causes of action relating to the performance
> of either party, and/or the purchase of franchise goods
> by Consultant Franchisee [plaintiffs] will be settled
> by arbitration . . . .

¶ 20.01.

Section XX includes two exceptions to the arbitration
requirement.  Paragraph 20.03 provides that "[n]otwithstanding
the foregoing, the arbitrator will have no jurisdiction over

2

disputes relating to the ownership, validity, or registration of any mark, trade secret or copyright of Franchisor . . . . " Paragraph 20.05, moreover, allows the Franchisor to obtain preliminary injunctive relief or prejudgment remedies "to safeguard and protect Franchisor's interest prior to the filing of any arbitration proceeding . . . ".  It is undisputed that the exceptions are not at issue in this case.

Two sections later, in the "Miscellaneous" section (XXII) of the agreement, the following provision appears:

> Except to the extent governed by United States trademark laws, this franchise agreement is to be construed and interpreted in accordance with the laws of the State of Connecticut.  Consultant Franchisee and Franchisor hereby agree to submit any disputes between them to the jurisdiction and venue of a court of competent jurisdiction in the State of Connecticut, New Haven County.

Agreement, ¶ 22.01(a).[1]

Prior to signing the Franchisee Agreements, both Zaks and Stephens received Uniform Franchise Offering Circulars.  See Steven Zaks' and T. Barry Stephens' Offering Circular Receipts [Doc. # 58, Exs. 5, 8].  The Circulars, which the Federal Trade Commission requires as disclosures to potential franchisees, include the following provision:

---

[1]In the Zaks' Franchise Agreement, Paragraph 22.01(a) contains the following additional sentence: "You may bring a lawsuit in Maryland for claims arising under the Maryland Franchise Registration and Disclosure Law."

3

> The Franchise Agreement requires that all disagreements be
> settled by arbitration in Connecticut.  Out of State
> arbitration may force you to accept a less favorable
> settlement for disputes.  It may also cost you more to
> arbitrate with us in Connecticut than in your home state.

Steven Zaks' and T. Barry Stephens' Uniform Franchise Offering
Circulars [Doc. # 58,  Ex. 6 at 2; Ex. 9 at 2].

At the same time Zaks signed the Franchise Agreement, he and

TES also executed an addendum, which stated:

> Notwithstanding anything to the contrary in the Franchise
> Agreement to which this Addendum is attached, the following
> terms and conditions shall control: . . .  The Franchise
> Agreement requires binding arbitration.  The Arbitration
> will occur in Connecticut as the arbitrators shall agree.
> It is presumed that costs shall be split unless awarded to
> one party by the arbitrators.  This provision may not be
> enforceable under California law.

Zaks' Franchise Agreement Addendum [Doc. # 58, Ex. 4] at CA-33.

## II.  Discussion

The Court's prior rulings concluded that the Franchise

Agreements that Zaks and Stephens signed were ambiguous in that

Section XX provision required virtually all disputes to be

settled by arbitration, and Paragraph 22.01 provides that the

parties agreed to submit any disputes between them to a court of

competent jurisdiction.  This Court concluded that the

contractual terms could not be reconciled because Paragraph 22.01

contained no limitation or explanation indicating that it is

applicable only to trademark disputes or otherwise subject to the

arbitration provisions of Section XX, and instead plainly

provided that "any disputes" are to be decided by a court of

4

competent jurisdiction. Thus, what the arbitration provision expressly provided appeared to be taken away by the separate provision that all disputes be submitted to a court of competent jurisdiction. Construing the ambiguity in the Franchise Agreement against the drafter, see Hartford Elec. Applicators of Thermalux, Inc. v. Alden, 169 Conn. 177, 182 (1975) (citation omitted), the Court denied the defendants' motions to compel arbitration. This Court's earlier rulings did not address the existence of the Zaks Franchise Agreement Addendum or the Uniform Franchise Offering Circulars, which were not then part of the record.

For the reasons discussed below, this Court now concludes that the Addendum that Zaks and TES executed simultaneously with the Franchise Agreement unambiguously establishes that Zaks' claims are subject to arbitration. Further, the Offering Circular that Stephens signed resolves the ambiguity in his Franchise Agreement, establishing the contractual understanding between Stephens and TES to submit claims to arbitration. Accordingly, upon reconsideration, defendants' motion to compel arbitration and stay litigation is granted.

**A.   Addendum**

The Addendum that Zaks and Terry Powell, Chief Executive Officer of TES, executed along with the Franchise Agreement on November 29, 2000 is unambiguous that "[n]otwithstanding anything

5

to the contrary in the [Zaks] Franchise Agreement . . . the

Franchise Agreement requires binding arbitration. . . ."  Zaks'

Franchise Agreement Addendum [Doc. # 58 , Ex. 4] at CA-33.

"When there are multiple writings regarding the same transaction,

the writings should be considered together in construing the

contract."  United Illum. Co. v. Wisvest-Connecticut, LLC, 259

Conn. 665, 671 (2002) (quoting Mongillo v. Commissioner of

Trans., 214 Conn. 225, 229 (1990)).  Here, the categorical use of

the phrase "notwithstanding anything to the contrary," obviates

the tension between Section XX and Paragraph 22.01(a) in the

Franchise Agreement, and clarifies that Zaks and TES had a

contractual understanding to submit all disputes and claims

relating to the Franchise Agreement to arbitration.  Given the

use of the term "notwithstanding," plaintiff's argument that the

Addendum served merely to recite the fact that there is an

arbitration provision in the Franchise Agreement, not to trump

Paragraph 22.01(a), is unavailing.

Plaintiffs argue more particularly, however, that construing

the Addendum as superceding any contrary terms in the Franchise

Agreement would (1)render meaningless an additional provision in

Zaks' Franchise Agreement, and (2) violate the requirements of

Maryland law, where Zaks' franchise was registered.  Paragraph

22.01(a) of Zak's Franchise Agreement contains the following

additional provision, appearing as the last sentence in the

paragraph, which was added to the Franchise Agreement to ensure

compliance with Maryland's Franchise Registration and Disclosure

Law:

> You may bring a lawsuit in Maryland for claims arising
> under the Maryland Franchise Registration and
> Disclosure Law.

By construing the Franchise Agreement to require arbitration and

thus giving effect to Section XX, Paragraph 22.01(a) would

necessarily be deemed a mere residual venue clause, applied only

after the terms of arbitration in Section XX are given full

effect, a construction that plaintiffs contend is inconsistent

with Paragraph 22.01(a)'s additional provision regarding the

bringing of a lawsuit in Maryland.  Plaintiffs argue that if the

parties in fact had intended Paragraph 22.01(a) to be a residual

venue provision, then Zaks and TES would have more appropriately

added the Maryland lawsuit provision to Article XX, where all of

the exceptions to arbitration are listed.  In plaintiffs' view,

the addition of the Maryland lawsuit provision to Paragraph

22.01(a) is meaningless if the paragraph is viewed as a residual

clause, as it would mean that the right to file suit in Maryland

would arise only if Zaks otherwise overcame arbitrability under

Article XX of his Franchise Agreement.  According to plaintiffs,

"the TES parties would thus have failed to satisfy one of the

conditions for registration of their franchise offering in

Maryland, that they 'permit a franchise to bring a lawsuit in

7

Maryland for claims arising under the Maryland Franchise
Registration and Disclosure Law.'" Plaintiff's Memorandum
Opposing Defendants' Motion to Stay Litigation and Compel
Arbitration (II) [Doc. # 59] at 28.

The plain language of the Maryland lawsuit provision in
Paragraph 22.01(a), however, is consistent with a residual venue
provision. Indeed, the use of the word "lawsuit" is revealing; a
reasonable construction of the provision would be that the
parties consent to be sued in Maryland (in addition to
Connecticut), subject to the arbitration constraints to which
they have also agreed. Thus, any claim outside the scope of or
among the exceptions to the arbitration provision, or any claim
for judicial review subsequent to an arbitration decision, could
under the Agreement be brought in Maryland if the claim was based
on the Maryland Franchise Registration and Disclosure Law.
Plaintiffs' argument is based on the mistaken assumption that the
Maryland Franchise Registration and Disclosure Law prohibits
arbitration, or is otherwise inconsistent with a contractual
agreement between parties to arbitrate most claims arising out of
the contract. Plaintiffs cite no authority for its assumption.
The Court of Appeals of Maryland, however, has addressed the
precise issue of whether claims of violations of the Maryland
Franchise Registration and Disclosure Law permit the franchisee
to avoid an arbitration agreement in a contract. In Holmes v.

8

<u>Coverall North America</u>, 336 Md. 534, 550-51 (1994), the Maryland

Court of Appeals concluded:

> We see nothing inherent in this legislative policy [of the
> Franchise Registration and Disclosure Law] which is
> inconsistent with the enforcement of a valid arbitration
> agreement entered into by the parties to a franchise
> contract.  In fact, § 365B of the Franchise Act[2] states that
> '[t]he powers, remedies, procedures, and penalties of this
> subtitle are in addition to and not in limitation of any
> other powers, remedies, procedures, and penalties provided
> by law.'  Thus, because the Maryland Arbitration Act was in
> existence prior to the promulgation of the Franchise Act,[3]
> the language of § 365B of the Franchise Act seems to clearly
> provide for, rather than eliminate, the ability of the
> parties to agree to arbitrate disputes arising out of
> contracts that are subject to the Franchise Act.  The fact
> that the Franchise Act sets forth specific penalties and
> provides for both civil and criminal liability in no way
> precludes the right of the parties to a contract to agree to
> utilize arbitration to moderate their disputes.  We also
> find no indication in the legislative history of the
> Franchise Act that the legislature intended to preclude
> arbitration of disputes arising under contracts regulated by
> the Franchise Act.

<u>Id</u>. at 550-551.

Because the Maryland lawsuit provision in Paragraph 22.01(a) is

consistent with the arbitration provision in Section XX, and

construing this provision as a residual clause would not be

contrary to Maryland law, plaintiffs' argument lacks merit.

---

[2]The Maryland Franchise Act was renamed the Maryland
Franchise Regulation and Disclosure Law in 1992, and the sections
were renumbered.  Thus, Section 365B of the Franchise Act is now
numbered Section 14-204 of the Franchise Regulation and
Disclosure Law, but has otherwise not been changed in substance.

[3]Similarly, the Federal Arbitration Act, enacted in 1947,
was in existence prior to the Maryland Franchise Act, enacted in
1977.  <u>See</u> 9 U.S.C. § 2 et seq.

Plaintiffs also argue that the sole purpose of the Addendum was to recite certain exceptions to the Franchise Agreement required by state franchise administrators as a condition of the registration of the franchise in their states. Thus, plaintiffs contend that the addendum should be interpreted to read: "Notwithstanding anything in the Franchise Agreement requiring arbitration of disputes between the parties at a location in Connecticut, as the arbitrators may agree, and that the losing party may be required to pay costs of the arbitration proceedings, these provisions may not be enforceable as to franchisees in California." Plaintiffs' Memorandum Opposing Defendants; Motion to Stay Litigation and Compel Arbitration (II) [Doc. # 59] at 27-28. While it is appropriate to take into account "the situation of the parties and the circumstances connected with the transaction," Lawson v. Whitey's Frame Shop, 241 Conn. 678, 686 (1997), and thus appropriate to acknowledge that the Addendum was included to ensure compliance with state franchise registration requirements, plaintiffs' construction would contravene the plain language of the Addendum. "[T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and ... the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract.... Where the language of the contract is clear

10

and unambiguous, the contract is to be given effect according to
its terms. A court will not torture words to import ambiguity
where the ordinary meaning leaves no room for ambiguity." Id. at
686. Here, the Addendum contains the explicit proviso
"Notwithstanding anything to the contrary in the Franchise
Agreement . . . ." Zaks' Franchise Agreement Addendum [Doc. #
58, Ex. 4] at CA-33 (emphasis added). Plaintiffs' construction
would require the Court to disregard this clause, and is thus not
a permissible interpretation.

As a result, the Court finds that when construed with the
aid of the Addendum, the Zaks Franchise Agreement requires
arbitration.

**B.  Offering Circular**

Defendants argue that the Offering Circulars received by
both plaintiffs prior to the execution of the Franchise
Agreements should be viewed in the same manner as the Addendum
that Zaks signed simultaneously with the Franchise Agreement. The
Offering Circulars, however, are distinguishable from the
Addendum, and present a more difficult question. The Offering
Circulars are required disclosures made to prospective
franchisees prior to entering into a Franchise contract. While
the Offering Circular offers a summary of the terms of the
Franchise Agreement, it does not purport to supercede the terms
of the Franchise Agreement, as the Addendum accomplished with the

11

use of the phrase "Notwithstanding anything to the contrary . . . ." Moreover, unlike the Addendum that Zaks executed, the Offering Circular was signed by Stephens, acknowledging his receipt, over two weeks before his Franchise Agreement with TES was executed. The Offering Circular, therefore, is not part of the final integrated agreement between the parties. As Section XIX of the Franchise Agreement provides:

> This Franchise Agreement and all ancillary agreements executed contemporaneously herewith the entire agreement between the parties, and there are no other oral or written understandings or agreements between Franchisor and Consultant Franchisee.

Franchise Agreement, Section XIX:  Integration of Agreement [Doc. # 58, Ex. 7] at 32.

In short, the Offering Circular is parol evidence, and therefore may not be considered unless the Offering Circular may be viewed as clarifying an ambiguity in the contract rather than contradicting terms of the contract.

The parol evidence rule "is premised upon the idea that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict

12

what is written, would be dangerous and unjust in the extreme."
TIE Communications, Inc. v. Kopp, 218 Conn. 281, 288 (1991)
(citations and internal quotation marks omitted).  The rule
prohibits the use of extrinsic evidence to vary or contradict the
terms of an integrated contract, viewing such evidence as legally
irrelevant.  See Alstom Power, Inc. v. Balcke-Durr, Inc., 2004 WL
1291977, at *4 (Conn. June 15, 2004)("Generally, . . . we
continue to adhere to the general principle that the unambiguous
terms of a written contract containing a merger clause may not be
varied or contradicted by extrinsic evidence.") (citation and
internal quotation marks omitted).  Nonetheless, "such evidence
may still be admissible if relevant (1) to explain an ambiguity
appearing in the instrument; (2) to prove a collateral oral
agreement which does not vary the terms of the writing; (3) to
add a missing term in a writing which indicates on its face that
it does not set forth the complete agreement; or (4) to show
mistake or fraud. . . ."  TIE Communications, 218 Conn. at 288
(citations and internal quotation marks omitted).  The issue here
thus is whether the Offering Circular clarifies the ambiguity in
the Franchise Agreement.[4]

As this Court's previous ruling discussed, the terms of the

---

[4]The Court notes that neither party has requested the
equitable remedy of reformation of the contract on grounds of
mutual mistake or scrivener's error.  Accordingly, the Court
declines to consider such a remedy and will treat the issue as
one of contract interpretation.

Franchise Agreement are ambiguous, as plaintiff's view that
Paragraph 22.01(a) removes the arbitration obligation in Section
XX by allowing any dispute between the parties to be submitted to
a court of competent jurisdiction is as equally reasonable as the
defendant's view that Paragraph 22.01(a) represents a residual
venue clause to be invoked only after fulfillment of the
arbitration obligations in Section XX.  The Offering Circular, to
which a copy of the Franchise Agreement identical to that which
Stephens signed is attached, aids the resolution of this
ambiguity.  Most notably, the Offering Circular summarizes the
terms of the Franchise Agreement to state that "[t]he Franchise
Agreement requires that all disagreements be settled by
arbitration in Connecticut,"  Stephens' Offering Circular [Doc. #
58, Ex. 9], signifying the intent of the parties to submit
disputes to arbitration and Stephens' acknowledgment of
arbitration as a "risk factor" to signing the Franchise
Agreement.  Id.  The Offering Circular also supports defendants'
view that Paragraph 22.01(a) is a residual venue clause.  It
states in summary, for example, that "[t]he Franchise Agreement
requires that any legal actions be brought in Connecticut. . . ."
Id.  By using the phrase "legal actions," the Offering Circular
narrows and limits what the parties intended to mean by their
phrase "any disputes" in Paragraph 22.01 of the Franchise

14

Agreement itself.[5]  The defendants' construction is given further
support as the Circular identifies Paragraph 22.01 as a "choice
of forum" and "choice of law" provision.  See Offering Circular
[Doc. # 58, Ex. 9] at 21.  Taken as a whole, the Offering
Circular's descriptions of the Franchise Agreement serve to
resolve the ambiguity in the Franchise Agreement in defendants'
favor.  The arbitration provisions in Section XX were intended to
be given effect first, after which the choice of forum and choice
of law provisions of paragraph 22.01 could be invoked.

Construing Paragraph 22.01(a) as a residual clause does not
improperly vary or contradict the meaning of the Franchise
Agreement, because its meaning without reference to the parol
evidence was unclear.  See, e.g. Bead Chain Manufacturing Co. v.
Saxton Products, Inc., 183 Conn. 266, 273-74 (1981) (concluding
that ambiguity in purchase order arising from typed term
providing buyer with "exclusive use" but printed term apparently
providing buyer with "ownership" could be resolved by use of
parol evidence if parol evidence serves "to clarify the meaning

---

[5]The parties' intended meaning in this section is an
accepted limitation of the term.  For example, dispute has been
defined as "[a] conflict or controversy, esp. one that has given
rise to a particular lawsuit."  Blacks Law Dictionary 485 (7th
Ed. 1999).  While this meaning of the term would be more limited
than the apparently broader use of "disputes" in Section XX, the
fact that the parol evidence strongly indicates the parties
intended Paragraph 22.01(a) to be a residual clause invoked only
after Section XX was given full effect, removes the seeming
inconsistency.

of the integrated contract."); <u>United Illuminating Co. v.</u>
<u>Wisvest-Connecticut, LLC</u>., 259 Conn. 665, 674 (2002) (concluding
that ambiguity in power supply agreement and Hydro-Quebec
agreement properly resolved by extrinsic evidence); <u>Shawmut Bank</u>
<u>Connecticut, N.A. v. Connecticut Limousine Service, Inc</u>., 40
Conn.App. 268, 275 (1996) (holding that parol evidence offered
"to determine which of the references to events of default found
in the two transfer of voting power provisions should be given
effect," properly served to aid interpretation).  As such, the
Offering Circular resolves the ambiguity in the Franchise
Agreement and establishes that the parties intended to arbitrate
disputes.[6]

     This Court's previous ruling ultimately relied on the rule
of construction that ambiguous provisions in a contract are to be
interpreted against the drafter.  <u>See</u>, <u>e.g.</u> <u>Hartford Elec.</u>, 169
Conn. at 182.  Because the ambiguity may be resolved by reference
to the Zaks' Addendum and the Stephens' Offering Circular, the
"contra preferentem" doctrine, often viewed as a rule of "last
resort," need not be invoked.  <u>See</u> <u>O'Neil v. Retirement Plan for</u>
<u>Salaried Employees of RKO General, Inc</u>., 37 F.3d 55, 61 (2d Cir.
1994) (citations and internal quotation marks omitted).

_____

     [6]This Court's prior ruling concluded that the Section XX and
Paragraph 22.01 could not be reconciled.  The clarifying
extrinsic evidence has now persuaded the Court that the
provisions may in fact be properly reconciled by deeming
Paragraph 22.01 a residual venue clause.

**C.   Enforcement of Arbitration by Non-Signatories to the Arbitration Agreement**

Plaintiff's suit makes claims against two parties who were not signatories to the Franchise Agreement: Terry Powell as CEO of TES, and The Entrepreneurs' Source, Inc.  "Under Second Circuit law, claims against non-signatories to an arbitration agreement may also be subject to mandatory arbitration, where 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.' " <u>Gambardella v. Pentec, Inc.</u>, 218 F.Supp.2d 237, 241 (D.Conn. 1997) (quoting <u>Choctaw Generation Ltd. Partnership v. American Home Assurance Co.</u>, 271 F.3d 403, 404 (2d Cir. 2001) (internal quotations omitted)).  "Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." <u>Campaniello Imports Inc. v. Saporiti Italia S.p.A.</u>, 117 F.3d 655, 669 (2d Cir. 1997) (quoting <u>Roby v. Corporation of Lloyd's</u>, 996 F.2d 1353, 1360 (2d Cir. 1993)).  Thus, in <u>Campaniello</u>, the Second Circuit "held that claims against an individual employee that arose out of the relationship between plaintiff and that individual's employer, which was the subject of a mandatory arbitration agreement, were also subject to mandatory arbitration." <u>Gambardella</u>, 218 F.Supp.2d at 241-42 (D.Conn. 1997).

Here, defendants argue that as in <u>Gambardella</u>, plaintiffs'

17

claims against the non-signatories are all directly related to their relationship with TES and to the plaintiffs' claims against TES, which are undisputedly within the scope of the arbitration agreement.  Plaintiffs acknowledge that they stated in their complaints that the TES Parties "have no separate recognizable legal identities for the purposes of this action."  Complaint [Doc. # 1] at ¶ 9.  Plaintiffs rely, however, on <u>Thompson-CSF, S.A. v. Am. Arbitrations Ass'n</u>, 64 F.3d 773, 780 (2d Cir. 1995), for the proposition that absent an express agreement to arbitrate, the Court has recognized only "limited theories upon which [it] is willing to enforce an arbitration agreement against a nonsignatory." <u>Id</u>.  But the limitations observed in <u>Thompson</u> are inapplicable where, as here, "it is the non-signatory that seeks to invoke the arbitration clause." <u>Choctaw</u>, 271 F.3d at 406.  The issue then, as in <u>Gambardella</u>, "is not whether non-signatories to the agreement can be compelled to arbitrate; rather, it is whether these non-signatories may compel plaintiff, admittedly a party to the contract, to arbitrate." <u>Gambardella</u>, 218 F.Supp.2d at 243.  The Court concludes that the non-signatories to the Franchise Agreements may enforce the arbitration agreement.

Plaintiffs also allege that they will be irreparably harmed if they are required to arbitrate their claims because they will not (1) be able to join their actions in a single more cost-

18

effective proceeding, as they must arbitrate first against only
TES and then, in a separate action, against the other two
defendants; (2) be able to join forces with each other in a
single most cost-effective proceeding; and (3) be able to seek
class action certification.  Given the strong presumption in
favor of arbitration where an agreement to arbitrate exists,
plaintiffs' arbitration case management concerns are unavailing.[7]
See 9 U.S.C. § 2 (agreement to arbitrate "shall be valid,
irrevocable, and enforceable, save upon such grounds as exist at
law or in equity for the revocation of any contract");
Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional de
Venezuela, 991 F.2d 42, 45 (2d Cir. 1993) ("[W]here a court is
satisfied that a dispute before it is arbitrable, it must stay
proceedings and order the parties to proceed to arbitration.").

**III.  Conclusion**

For the foregoing reasons, defendants' Motion to Compel
Arbitration and Stay Litigation is hereby GRANTED as to both
plaintiffs Zaks and Stephens.

IT IS SO ORDERED.

_____
Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this ___ day of July, 2004.**

---

[7]The parties give no indication that these case management
concerns could not be raised to or considered by the arbitrators.

19